BRINTON v. KUTZ et al.

(Circuit Court, E. D. Pennsylvania. May 16, 1898.)

PATENTS—CONSTRUCTION OF CLAIMS—KNITTING MACHINES.·
    The Brinton patent, No. 445,494, for improvements in loop-holding mechanism for knitting machines, consisting in a "novel construction and arrangement of the holders or sinkers, and of other supporting and operating parts," must, in view of the prior state of the art, be strictly confined to the specific means described and claimed.

This was a suit in equity by Henry Brinton against Jarius Kutz and Ellen Diefenderfer, co-partners trading as the Boss Knitting-Machine Works, and James L. Eck, for alleged infringement of a patent.

Joshua Pusey, for complainant.
Fraley & Paul, for defendants.

DALLAS, Circuit Judge. This bill charges the defendants with infringement of letters patent No. 445,494, dated January 27, 1891, issued to Henry Brinton. The specification states that the invention is of certain new and useful improvements in loop-holding mechanism for knitting machines, and that "the improvement consists in a novel construction and arrangement of the holders or sinkers, and of other supporting and operating parts, whereby certain advantages are gained." The holders or sinkers here referred to are the devices "which are used in connection with knitting machines to feed forward or take up the fabric as rapidly as produced, and to prevent the fabric from rising and moving with the needles as they are successively advanced to engage the yarn in the knitting operation"; and these devices, the specification informs us, "consist, ordinarily, of a series of metallic plates or blades which are constructed to slide in a plane at right angles to the line of movement of the needles, or substantially so, being supported in suitable guideways formed radially in the outer surface of an annular bed surrounding the outer end of the cylindrical needle-bed, and reciprocating in such guideways by means of a suitable cam." Further on it is said that the loop-holders had heretofore been made straight, and that "this construction necessitated the placing of the sinker-bed and the actuating cam-ring on or above the horizontal top-plane of the needle-cylinder," which was objectionable. This objection the patentee says he obviated, "in that by providing each of the sinkers or holders with a vertical limb, the cam-ring, E, and sinker-bed will be located below the top of the needle-cylinder, as herein described and illustrated." The claims involved in this suit are as follows:

"(1) The combination, with a needle-cylinder provided at the top with grooves, a-2, and having also the radially-grooved flange, B, below the top of said cylinder, of the needles and their operating cams, and the holders or sinkers, D, provided with a notch, d-4, and operative mechanism therefor, said holders or sinkers engaging and working in the grooves of the flange, B, and the grooves of the cylinder, substantially as described.

"(2) The combination, with a needle-cylinder provided at the top with a portion reduced to the plane of the bottom of the needle grooves, of a radially-grooved· flange below such reduced portion, and loop-holders engaging and

working in the grooves of said flange, and provided each with a loop-engaging offset above the top of the cylinder, and means for operating said loop-holders, substantially as described."

"(5) The combination, with a radially-grooved cylinder and flange, the grooves of the two parts being in different horizontal planes, of the holders or sinkers having parts engaging the radial grooves of the cylinder and flange, substantially as described."

It is not necessary to consider these claims separately and in detail. It has been conceded that the gist of the invention is covered by the first one, which, in substance and essence, seems to be for a special form of holders, which, by reason of what has been called their "gooseneck" configuration, are adapted to work at their functional end in "the grooves of the cylinders," and at their cam-engaging end "in the grooves of the flange, B," placed below the level of the top of the cylinder. In other words, Brinton's object was to overcome the objection pointed out in his specification to the ordinary holders (shown in United States letters patent to Shaw, No. 218,460, August 12, 1879), namely, to their being made straight, so that "their notched yarn-engaging fingers were in or about in line with their limbs, d-2"; and to attain this object he provided a radially-grooved flange below the top of the cylinder, and made his holder of such shape that it would engage and work partly in the grooves of that flange and partly in those of the cylinder. The changes which he made were very slight, and there is room for serious question as to whether, in view of the prior patents which have been introduced in evidence, and especially of the German patent to Bonamy, of November 12, 1884, his performance should be regarded as involving invention. Notwithstanding that the oral and printed arguments of counsel, as well as the proofs, have received my most careful consideration, I find it impossible to free my mind from doubt upon that question; but of this doubt, in view of the weight to be accorded to the patent, the complainant is entitled to the benefit. It is, however, perfectly clear to me that the prior state of the art as disclosed in this case requires that the complainant's monopoly shall be absolutely restricted to the specific means which he has described and claimed, and, with reference to this limitation of his rights, I cannot find infringement. In the defendants' construction, although the work-engaging portion of the holder is located in the plane of the top of the cylinder, and its other part is below that plane, yet it is so formed and arranged as to slide in grooves, not at different levels, but at one level only; and this variation from the patented contrivance, however trifling it may appear, cannot, I think, be considered immaterial. As I have said, the prior art, and especially the Bonamy patent, before referred to, requires that it shall be regarded as substantial. The character and importance of this variation is pointed out by an expert witness on behalf of the defendants as follows:

"Complainant's sinker, as shown and described in the patent in suit, comprises three distinct portions, which he has separately lettered, as follows: d-2 refers to the body portion which forms the base, so to speak, of said sinker; d-1 is what he has termed the forward nose or finger, which exists some distance above said base portion. These two portions, the base or main body and the nose or finger, are separately supported in different

grooves in different portions of complainant's structure; that is to say, the base portion of d-2 engages and works in the radial grooves of the flange, B, but the nose or finger engages and works in a separate groove at a higher level, and in the needle bed or cylinder. Said two parts, the base and nose or finger, are connected by what he has termed a vertical limb, d, which does not engage or work in either of said two separate grooves which support the two separate portions of the sinker aforesaid. On the contrary, as shown both in Fig. 2 and Fig. 3 of the Brinton patent, the said vertical limb moves freely in an open space between two separate supporting grooves. Referring now to the sinkers which form part of complainant's exhibit defendants' machine, I find that there is no such separate supporting at different levels of said sinker as exists in complainant's patent in suit, the supporting function, so to speak, in defendants' device being performed by what is in effect a single groove, the groove in the radial flange exactly coinciding with the groove of the defendants' cylinder, so that said grooves, if they may be said to be separate grooves, are not at different levels, but, on the contrary, are at a single common level. Defendants' sinker therefore is so constructed as to work in said grooves on a single level, and whilst it is true that the work-engaging portion of defendants' sinker is not located in the plane of the cam-engaging portion of said sinker, yet said two portions do not exist as separate portions of said sinker, as do similar portions in the Brinton device of the patent in suit. On the contrary, said sinker engages as a whole, and works as a whole, in a groove which has but a single level. It is true that a portion of said groove has side walls which extend above the level of the cam-engaging portion, but said side walls do not in any sense afford a separate and distinct support for the work-engaging portion, but, on the contrary, serve to support said sinker throughout its entire height, and thus insure that it shall not be displaced by any lateral strain which may be put upon it. There is, therefore, no necessity in defendants' machine for a separate supporting groove for the work-engaging portion of his sinker, as such necessity exists in complainant's device, where a large portion of the sinker body, namely, what he has termed the vertical limb, d, is wholly unsupported and works in an open space intermediate of two separate grooves at different levels."

The bill is dismissed, with costs.